IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RIKER McKENZIE, | | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. JFM-10-3389 |
| | * | |
| INTERNATIONAL LONGSHOREMEN'S | * | |
| ASSOCIATION, AFL-CIO, | * | |
| Defendant. | * | |
| | * | |
| | * | |
| | ****** | |

MEMORANDUM

Plaintiff, Riker McKenzie ("McKenzie"), was the union president of the International Longshoreman's Association ("the ILA") Local 333 until he was removed from that position on the basis of an alleged 1975 drug conviction. McKenzie filed suit against the ILA for wrongful removal, alleging due process violations and breach of contract deriving from the ILA Constitution and § 504 of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 504.[1] McKenzie seeks a declaration that his removal violated the ILA Constitution and federal law. He also seeks compensatory damages and attorneys' fees and costs. The ILA has moved for summary judgment. The issues have been fully briefed, and no oral argument is necessary. *See* Local Rule 105.6. For the reasons that follow, the ILA's motion for summary judgment is granted.

---

[1] McKenzie initially alleged a violation of the LMRDA stemming from the ILA Constitution's rule barring members with drug-related criminal convictions from holding elective office. The ILA has since amended its Constitution to conform to federal law, prescribing a more limited debarment period of 13 years, (Def.'s Mot. Summ. J., Gleason Aff. ¶ 21, ECF No. 60-2), thereby mooting the claim under the LMRDA.

I.

Plaintiff Riker McKenzie ("McKenzie") took office as president of Local 333 in January 2009. (Am. Compl. ¶ 8, ECF No. 18.) McKenzie's term as president was to run until December 31, 2010. (Def.'s Mot. Summ. J., Gleason Aff.. ¶ 5 ("Gleason Aff."), ECF No. 60-2.) Upon assuming his position, McKenzie implemented changes that he promised to make during his campaign for union presidency, including changing the salary structure for Local 333 officials. (Am. Compl. ¶ 9.) McKenzie also pushed for greater autonomy from the national ILA because the national union was under Department of Justice investigation for alleged violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), and McKenzie believed it was important to distance Local 333 from the national leadership's alleged wrongdoing. (*Id*. ¶¶ 11– 14.)

McKenzie avers that, despite "an overwhelming mandate from the membership," his plans to change the salary structure created animosity within Local 333, particularly with the Vice President, Victor Able ("Able"). (*Id*. ¶¶ 8, 14.) On May 1, 2010, Able sent a letter filing internal disciplinary charges alleging financial improprieties, (Gleason Aff. ¶ 6), on the basis of what McKenzie calls "unproven allegations." (Am. Compl. ¶ 15.) On May 25, 2010, the ILA notified McKenzie that there would be a hearing regarding Able's internal disciplinary charges. (Gleason Aff. ¶ 7; Def.'s Mot. Summ. J., Ex. C, ECF No. 60-5.) On May 27, 2010, Able's attorney, John M. Singleton, sent another letter, adding that McKenzie had failed to disclose a 1975 conviction for possession of heroin with intent to distribute. (Gleason Aff. ¶ 16; Def.'s Mot. Summ. J., Ex. D, ECF No. 60-6.) At the time, the ILA Constitution prohibited members with drug-related criminal convictions from holding elective office. (Gleason Aff. ¶¶ 8, 26; 2007 ILA Const., Art. XIII, § 5, ECF No. 18-1.)

Able's allegations of misconduct were presented at an unrecorded hearing on June 15, 2010, before a two-member panel constituted for that purpose. (Am. Compl. ¶ 18.) Both sides were represented by counsel, (Gleason Aff. ¶ 10), and were afforded the opportunity to call and cross-examine witnesses, introduce evidence, and submit statements. (Def.'s Mot. Summ. J. at 4, ECF No. 61.) In addition to the allegations of financial misconduct, the panel heard argument regarding the alleged conviction McKenzie failed to reveal. (Def.'s Mot. Summ. J., Ex. E, ECF No. 60-7.) McKenzie's attorney, Robert Fulton Dashiell ("Dashiell"), stipulated to the fact that McKenzie had a 1975 conviction for which he completed a two-year period of parole, but argued that the lifetime ban on holding elective office, which was adopted after McKenzie's alleged conviction, should not apply retroactively. (Def.'s Mot. Summ. J., Ex. E at 8; *see also* Def.'s Mot. Summ. J., Ex. G at 2, ECF No. 60-9.) McKenzie contends that he never authorized his attorney to stipulate to any convictions and that, at the hearing, McKenzie vehemently denied the fact of conviction. (McKenzie Aff. at ¶¶ 2–3, ECF No. 68-1.)

On August 2, 2010, following the hearing, Richard P. Hughes, ILA President and member of the Executive Council, sent a letter and committee report finding McKenzie ineligible to hold the office of president and recommending his immediate removal. (Am. Compl. ¶ 19.) The letter also precluded McKenzie from running for president in the December 3, 2010 election. (*Id.* ¶ 20.) By letter dated August 3, 2010, Dashiell sent a letter seeking reconsideration of the ILA decision, again arguing that, while McKenzie had indeed been convicted in 1975,[2] the conviction predated the adoption of the relevant portion of the ILA Constitution and should not

---

[2] The committee report issued following the hearing, Exhibit E, recounts Dashiell's testimony on McKenzie's behalf but refers to a 1977 conviction, as opposed to the 1975 conviction Dashiell confirmed in his August 3, 2010 letter seeking reconsideration of McKenzie's dismissal, Exhibit G. The discrepancy in the dates is immaterial. It is undisputed that the drug-related charges at issue arose in 1975.

have been retroactively applied to bar McKenzie's holding office. (Def.'s Mot. Summ. J., Ex. G at 3, ECF No. 60-9.) McKenzie avers that Dashiell was not authorized to admit the fact of conviction or even "probation before judgment" and contends that Dashiell sent the letter without consulting him. (McKenzie Aff. ¶ 4.) On August 18, 2010 Dashiell sent another letter urging reconsideration. (Def.'s Mot. Summ. J., Ex. H, ECF No. 60-10.) The supplemental letter indicated that McKenzie had not, in fact, ever been convicted in 1975 but rather had been granted probation before judgment, which, according to Dashiell, does not constitute a conviction. (*Id.*)

On September 23, 2010, McKenzie secured new counsel, James Klimaski, who submitted McKenzie's "Application for Criminal History Record Check," which did not show any 1975 conviction in the State of Maryland. (Def.'s Mot. Summ. J, Ex. I, ECF No. 60-11.) The record did, however, indicate that it "may not contain data prior to 1978." (*Id.*) Along with his opposition to McKenzie's request for reconsideration, on October 29, 2010, Able's attorney submitted a purported Division of Parole and Probation Investigation Report from the Criminal Court of Baltimore in *In re State of Maryland v. Richard Junior McKenzie*. (Def's Mot. Summ. J. at 11.) The purported pre-sentence report stemmed from the investigation for an alleged handgun violation in January of 1980 in which the 1975 drug charge was listed as a past offense. (Am. Compl. ¶ 17; Def.'s Mot. Summ. J., Ex. J, ECF No. 60-12.) The pre-sentence report indicated that on March 2, 1977, McKenzie received a suspended sentence of four years and was placed on four years' probation for an October 10, 1975 instance involving possession of heroin with intent to distribute. (Def.'s Mot. Summ. J., Ex. J.) McKenzie then offered certified statements from Maryland court custodians of criminal records and the District Court for the District of Maryland, indicating that they were unable to locate any evidence of the 1975 drug

4

conviction for "Richard Junior McKenzie, aka Riker Junior McKenzie" despite a diligent search. (Am. Compl. ¶ 20; Pl.'s Opp'n Summ. J., Ex. 3.)

The ILA Executive Board voted to deny reconsideration and affirm McKenzie's removal. (Am. Compl. ¶ 22.) McKenzie was informed of the Board's decision by letter from the ILA Secretary-Treasurer, Robert E. Gleason, on November 22, 2010. (*Id.*) On December 3, 2010, Local 333 held an election for officers' positions. (*Id.* ¶ 24.) McKenzie's supporters organized a write-on effort on his behalf, garnering 348 votes. (*Id.*) The nominated candidate received only 175 votes but was allowed to take office as president of Local 333. (*Id.*)

McKenzie filed suit against the ILA. Initially, McKenzie filed a claim alleging violation of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. § 504, because the ILA Constitution did not limit the ineligibility period for running for elective office following a drug-related criminal conviction. The ILA has since amended its Constitution to conform to federal law and now permits a more limited 13-year ban, which can be extended only "within reasonable limits." As a result, it is undisputed that this claim is moot, (Pl.'s Opp'n Summ. J. at 3 n.6, ECF No. 68), and that McKenzie may now run for office in the election scheduled for December 2012. (Def.'s Mot. Summ. J. at 12.) McKenzie has since been elected Vice President of Local 333, winning 270 votes, while Victor Able, the member who brought the initial charges against McKenzie, garnered only 73. (McKenzie Aff. at ¶ 6.) The office of Vice President pays an annual salary of $7000 less than the office of President. (*Id.* at ¶ 7.)

McKenzie's remaining claims include breach of contract and failure of due process[3] resulting from violations of the ILA Constitution, Art. XVIII, sections 1(b) and 2, which mandate proper notice and an opportunity for a fair hearing prior to union disciplinary action. (Am. Compl. ¶¶ 40–41.) McKenzie contends that the Executive Board's ruling was motivated by hostility towards McKenzie's reform efforts and was based on an inadmissible, unauthenticated document and disregard for certified statements from court custodians that no evidence of such a drug conviction exists. McKenzie seeks declaratory relief that his removal was in violation of the ILA Constitution, compensatory damages, and attorneys' fees. (*Id.* Prayer for Relief ¶¶ 2–5.)

This court denied the ILA's motion to dismiss on April 22, 2011. (ECF No. 39.) Discovery concluded December 16, 2011. (Def.'s Mot. Summ. J. at 13.) Now pending is the ILA's motion for summary judgment.

**II**.

Summary judgment is appropriate when the evidence shows "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is "material" if its resolution could impact the outcome in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The "mere existence of a scintilla of evidence in support of plaintiff's position" is insufficient to defeat a motion for summary judgment. *Id*. at 252. Moreover, the non-moving party may not merely rest upon allegations or denials in her pleadings but must, by affidavit or other evidentiary showing, set out specific facts showing a genuine issue remains for trial. Fed.

---

[3] This court has jurisdiction according to the Labor Management Relations Act, which provides that "suits by or against labor organizations may be brought in district courts (1) in the district in which such organization maintains its principal office, or (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members." 29 U.S.C. § 185.

R. Civ. P. 56(e)(2).  If there is insufficient evidence for a reasonable jury to render a verdict in favor of the non-moving party, there is no genuine issue of material fact, and summary judgment may be granted.  *See Anderson*, 477 U.S. at 248.  When reviewing a motion for summary judgment, the court must look at the facts and inferences drawn therefrom in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 373, 378 (2007).

## III.

McKenzie contends that his dismissal violated two provisions of the ILA Constitution, Article XVIII, sections 1(b) and 2, and that these violations amounted to a breach of contract and failure to provide the due process afforded by the ILA Constitution.  This contention is without merit.

### A. Section 1(b)

Article XVIII, section 1(b) of the ILA Constitution provides that "[a]ny member, officer, or representative of the I.L.A. or any of its subdivisions, shall be subject to discipline who is found guilty, after notice of and opportunity for hearing upon charges, as provided for in this Article, of violating any provision of this Constitution . . . or of dishonesty, misconduct, or conduct detrimental to the welfare of the I.L.A."  McKenzie contends that section 1(b) was violated because the hearing he received was not "full and fair" and did not comport with the ILA Constitution's promise of due process.  McKenzie alleges that, in deciding to remove him, the union "relied upon an inadmissible document lacking in authenticity and reliability and disregarded certified statements from court custodians of records that no evidence of such a drug conviction exists."  (Am. Compl. ¶¶ 40–42.)

While section 1(b) of the ILA Constitution does not use the "full and fair hearing" language, the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C.

7

§ 411(a)(5), which McKenzie does not cite, safeguards union members against improper disciplinary action.  The LMRDA provides that "[n]o member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."  29 U.S.C. § 411(a)(5).

A "full and fair" union disciplinary hearing need not necessarily comply "with the full panoply of procedural safeguards found in criminal proceedings," *Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975), but it "requires both an impartial tribunal and that the charges be supported by 'some evidence.'"  *Serafinn v. Int'l Bhd. of Teamsters*, No. 03C9409, 2006 WL 2497794, at *8 (N.D. Ill. Aug. 28, 2006) (quoting *Tincher*, 520 F.2d at 854); *see also Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 605 F.2d 1228, 1243 (2d Cir. 1979) (noting that there are "markedly different safeguards" in judicial adjudication as opposed to union disciplinary proceedings, which "are governed by a far less formal regimen and, except in extreme cases, are not reviewed in the federal courts for the sufficiency of the evidence").  Union disciplinary determinations "on charges unsupported by *any* evidence [are] a denial of due process."  *Int'l Bhd. of Boilermakers v. Hardeman*, 401 U.S. 233, 246 (1971) (emphasis added).

The parties do not dispute the applicability of the "some evidence" standard, (Pl.'s Opp'n Summ. J. at 3; Def.'s Reply at 6, ECF No. 73), nor do they dispute that hearsay evidence is permissible in union disciplinary hearings.  (Pl.'s Opp'n Summ. J. at 4; Def.'s Reply at 6.)  The only question, then, is whether there was "some evidence" at the hearing and during the reconsideration process to support the union's decision. *See Eisman v. Baltimore Reg'l Joint Bd. of Amalgamated Clothing Workers*, 352 F. Supp. 429, 432 n.1 (D. Md. 1972) ("With respect to the issue of whether a labor union has wrongfully imposed discipline upon a member . . . the

scope of judicial review of union disciplinary action is limited to a mere examination of the record of the union proceeding to determine whether 'some' evidence was presented at the union disciplinary hearing to support the charges made.") Whether there was "some evidence" is a legal determination for the court. *Id*. The court will not review the union's decision *de novo*. *See Mandaglio v. United Bhd. of Carpenters*, 575 F. Supp. 646, 651 n.7 (E.D.N.Y. 1983) ("[P]laintiffs seek what they cannot have under the LMRDA, a trial *de novo* in court"); *Sheet Metal Workers Local Union No. 218 v. Massie*, 627 N.E. 2d 1154, 1159–60 (Ill. App. 1993) (holding that a union disciplinary hearing is not subject to *de novo* review).

It is undisputed that McKenzie had notice of the charges against him, opportunity for a hearing at which he was represented by counsel, and an opportunity to appeal his dismissal, again with representation by counsel. McKenzie contends that the pre-sentence report was "inadmissible" but does not point to any case law or to any provision of the ILA Constitution outlining what constitutes admissible evidence in a union disciplinary proceeding. While the ILA concedes that the report "would likely be considered hearsay," both parties now agree that hearsay evidence is admissible in union disciplinary proceedings. Rather than object on hearsay grounds, McKenzie instead challenges the pre-sentence report's admissibility because, he contends, it lacks indicia of reliability. Unfortunately for McKenzie, much of the evidence he offers to support his contention was not before the union during the hearing or the reconsideration process.

Michael McCormick ("McCormick"), Director of Reference Services for the Maryland State Archives, prepared his report regarding the reliability of the pre-sentence report on December 3, 2010, (McCormick Aff., Ex. 2, Report on the Release of Sealed Documents, ECF No. 68-2), but the ILA ruled on McKenzie's request for reconsideration in late November 2010,

without the benefit of McCormick's report. Similarly, the McCormick affidavit, submitted in conjunction with McKenzie's opposition to summary judgment, was prepared March 13, 2012 and was not part of the record before the union. In his report, McCormick indicates that McKenzie's file did appear to include a copy of the pre-sentence report in an envelope marked as "sealed," but in his affidavit, McCormick raises questions about the pre-sentence report's reliability. (*Id*. at 1.) He notes that the pre-sentence report fails to disclose the source of the 1975 drug charge despite listing the source for all other charges, and he confirms that he was unable to locate any such charges against McKenzie in the Circuit and District Court for Baltimore County. (McCormick Aff. at ¶¶ 4–5.) Although McCormick's affidavit raises questions as to the reliability and source of the alleged pre-sentence report, the union was not privy to this additional information during the hearing or the reconsideration process. It is therefore not something I can consider, as the union's decision is not under *de novo* review before this court.

Even if the presentence report were unreliable, McKenzie cannot contend that his dismissal was based solely on inadmissible evidence. During McKenzie's hearing, his own lawyer stipulated to the 1975 conviction. Again in McKenzie's first letter request for reconsideration, his lawyer conceded the conviction but argued that the ILA Constitution's lifetime bar on elective office should not apply retroactively. Only after the hearing and McKenzie's second letter requesting reconsideration was there any indication that the conviction had not been a conviction after all. Although McKenzie avers that he did not authorize his lawyer's concessions at the hearing or in the letters, his after-the-fact contention does not alone refute the evidence the union considered. In challenging the fact of conviction during reconsideration, McKenzie asserted that the pre-sentence report was "bogus," (Pl.'s Opp'n

Summ. J. at 3), and submitted letters from the Maryland State Archives and the United States District Court for the District of Maryland, indicating that there were no such criminal charges on record for "Richard J. McKenzie, a.k.a. Riker McKenzie." (Pl.'s Opp'n Summ. J., Ex. 3 at 5–13.) The union was at liberty to consider the pre-sentence report alongside McKenzie and his lawyers' assertions, as well as the letters from the Maryland State Archives and the District of Maryland in making its decision. This court reviews the evidence before the union only for a determination of whether there was "some evidence" to support its decision. While the evidence on record at the reconsideration stage raised a question as to whether McKenzie had in fact been convicted of the heroin charges, there was "some evidence" upon which the union could base its decision.

### B. Section 2

Article XVIII, section 2 of the ILA Constitution provides that "The Executive Council shall have power, after notice of and opportunity for hearing upon charges, to suspend, expel, dissolve, merge, consolidate or otherwise discipline any local union or district council which it finds guilty of violating any provisions of this Constitution or decision of the Executive Council made pursuant thereto." This provision, as defendant points out, refers to the Executive Council's ability to discipline local unions or their district councils, not officers or members. It therefore does not apply to McKenzie as a member or as former president of Local 333. However, even assuming it were applicable to McKenzie, there are no facts indicating that this section was violated. As stated with regard to section 1(b), McKenzie received both notice and an opportunity for a hearing, as well as an opportunity for appeal.

**Conclusion**

For the foregoing reasons, I find that there was some evidence upon which the union could conclude that McKenzie was subject to removal from his post as president of Local 333. Defendant's motion for summary judgment is therefore granted. A separate order to that effect is being entered herewith.

July 26, 2012                                                          /s/
Date                                                                        J. Frederick Motz
                                                                                 United States District Judge